Diana Rhodes, #5-2734
Traci Rivinus, #6-3920
Rhodes Law Firm, LLC
2015 Warren Avenue
Cheyenne, WY 82001
Telephone: 307.634.4444
Facsimile: 307.220-0280

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2018 FEB -5 PM 2: 28

STEPHAN HARRIS, CLERK
CHEYENNE

## UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF WYOMING

| | |
|---|---|
| **DARYL FARRINGTON,** )<br><br>        **Plaintiff,** )<br>**vs.** )<br>                             )<br>**SSC CHEYENNE  OPERATING COMPANY,** )<br>**LLC, a Foreign Limited Liability Company,** )<br>**d/b/a CHEYENNE HEALTHCARE CENTER.;** )<br>**SAVASENIORCARE ADMINISTRATIVE** )<br>**SERVICES, a Foreign Limited Liability** )<br>**Company; SAVASENIORCARE CONSULTING** )<br>**LLC, a Foreign Limited Liability Company;** )<br>**SAVA SENIOR CARE, LLC, a Foreign Limited** )<br>**Liability Company, and JOHN DOE** )<br>**CORPORATIONS,** )<br>                             )<br>        **Defendants.** ) | **Civil Doc. No.** **18 CV 24** -R |

---

## COMPLAINT AND DEMAND FOR JURY

Plaintiff, Daryl Farrington, by and through counsel, Diana Rhodes, Rhodes Law Firm, LLC,

for claims for relief against defendants SSC Cheyenne Operating Company, LLC, d/b/a Cheyenne

Healthcare Center; SavaSeniorCare Administrative Services, SavaSeniorCare Consulting LLC,

And SavaSeniorCare, LLC, and John Doe Corporations, hereinafter referred to as "Defendants

SavaSeniorCare", states and alleges upon information and belief as follows:

1.       At all times relevant to the facts alleged in this Complaint, Plaintiff, Daryl

Farrington, was a resident of Laramie County, Cheyenne, Wyoming.

2.      At all relevant times, Daryl Farrington was a resident of Cheyenne Healthcare Center [hereinafter "CHCC"], and suffered injuries while a resident of CHCC.

3.      Daryl Farrington brings this negligence action.  Mr. Farrington is a resident of the State of Michigan.

4.      Plaintiff is informed and believes and thereon alleges, that defendant SavaSeniorCare Administrative Services, LLC, is a for-profit limited liability company organized and existing under the laws of the state of Delaware.  Upon information and belief, SavaSeniorCare Administrative Services, L.C.C., is the administrative unit and management of SavaSeniorCare, L.L.C. and is engaged in, among other things, oversight, management, human resources, advertising, marketing, hiring, accounting, IT, compliance, legal and risk management functions, accounting services, accounts payable, accounts receivable, payroll benefits, and purchasing, direction and operation of nursing home facilities, including but not limited to Cheyenne HealthCare Center, located at 2700 E 12th St, Cheyenne, WY 82001.

5.      Upon information and belief, SavaSeniorCare, LLC is the sole member of SavaSeniorCare Administrative Services, LLC and is organized and existing under the laws of the State of Delaware.  With its affiliated and/or subsidiary companies, SavaSeniorCare, LLC is engaged in the oversight, direction, and operation of nursing home facilities, including but not limited to Cheyenne HealthCare Center, located at 2700 E 12th St, Cheyenne, WY 82001.

6.      Defendant SavaSeniorCare Consulting, LLC is a for-profit limited liability company organized and existing under the laws of the state of Delaware.

7.      Plaintiff is informed and believes, and thereon alleges, that defendant Cheyenne Operating Company, LLC, is a for-profit limited liability company organized and existing under the laws of the state of Delaware.  Upon information and belief, SSC Cheyenne Operating

Company, LLC, along with the other corporate defendants, are doing business as owners, operators, or managers of Cheyenne HealthCare Center.

8.      Defendant John Doe Management Company is a business and may have had ownership, oversight and/or management responsibilities over Defendants' facility as Cheyenne Health Care Center.

9.      Plaintiff is informed and believes, and based thereon allege, that at all times herein mentioned, each of the defendants was the agent, partner, joint venturer, aider and abetter, alter ego, and/or employee of each of the remaining defendants, and was acting within the course and scope of such agency, partnership, joint venture, and/or employment or in the capacity of an aider and abetter or alter ego.

10.     At all times relevant herein, agents, employees, servants, and apparent agents of the Defendants acted on behalf of themselves and on behalf of SavaSeniorCare, LLC, SavaSeniorCare Consulting, LLC, SavaSeniorCare Administrative Services, LLC, SSC Cheyenne Operating Company LLC/ d/b/a Cheyenne HealthCare Center, LLC, and John Doe Corporations, hereinafter referred to as "Defendants SavaSeniorCare," and/or their parent companies.

11.     The events giving rise to this action occurred in Laramie County, Wyoming.

12.     The amount in controversy in this action, exclusive of costs and interest, exceeds seventy-five thousand dollars ($75,000).

13.     A Notice of Claim was properly and timely executed to the Medical Review Panel of the State of Wyoming, pursuant to Wyo. Stat. § 9-2-1519. **Exhibit 1.** The Order of Dismissal was entered by the Medical Review Panel on January 11, 2018, and is attached as **Exhibit 2.** Pursuant to the Medical Review Panel Act, the Order of Dismissal provided Plaintiff with the availability of legal action, and this Court has jurisdiction.

14.     Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. §1332 (a)(1) and (2) and 28 U.S.C. § 1391(a).

15.     At all times material to this action, Defendants SavaSeniorCare were engaged in the business of for-profit custodial care of elderly and infirm nursing home residents and were the parent corporations and alter ego of SSC Cheyenne Operating Company, LLC, d/b/a Cheyenne HealthCare Center, LLC (CHCC).  As a consequence, Defendants SavaSeniorCare are responsible for any liability and damages that flow from the misconduct of the other defendants as well as being directly liable for its own independent misconduct.  Defendants SavaSeniorCare, through its employees and officers, as well as its subsidiary corporations, controlled the operation, planning, management, and quality control of the nursing facility.

16.     Defendants SavaSeniorCare controlled the operation, planning, management, and quality control of CHCC.  This includes, but is not limited to, control of marketing, human resources management, training, staffing, creation and implementation of all policy and procedures used by the nursing home facility, federal and state Medicare and Medicaid reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies.

17.     Defendants SavaSeniorCare, by holding themselves out as providers and administrators of such skilled services to the public, were at all times relevant hereto, responsible for providing high quality nursing, attendant care and rehabilitative services to their patients consistent with their health and safety requirement and needs for protection and with state and federal Medicaid nursing home statutes and regulations, as well as the common law standards of due care for nursing, rehabilitative and attendant care.

18.     Defendants are sued both directly for the negligent actions of the corporations and/or management, and vicariously, on the theory of principal-agent, for the actions and omissions of their employees and agents who were involved in the hereafter complained of series of negligently neglectful and careless incidents.

19.     At all times relevant hereto aides, orderlies, nurses, attendants and other nursing home staff of Defendants SavaSeniorCare who failed to provide or secure safe and appropriate nursing and other care, including necessary protective care, supervision, monitoring, and working and properly placed/located warning systems and devices, health, hygienic, and safety needs, adequate risk assessments, evaluations, diagnoses and other treatments to Daryl Farrington were acting within the scope and course of their employment and/or agency with these Defendants.

20.     Defendants' corporations, and each of them, are also sued directly for their negligence, including but not limited to, negligent supervision of staff, for inadequate and negligent staffing, for inadequate staff training with respect to the monitoring, supervision, hands-on or standby assistance, safety, and protection for vulnerable patients such as the Plaintiff, and for their failure to develop, implement, modify or otherwise assure appropriate individual care plans, policies and procedures necessary for the health, care, dignity, protection and safety of patients such as Daryl Farrington, all of which actions and omissions have now resulted in the injuries of Daryl Farrington as complained of herein.

21.     The Defendants owed to Daryl Farrington and the other residents a fiduciary duty to use their best efforts and to provide adequate resources to CHCC, so Daryl Farrington and the other residents had adequate care.  Daryl Farrington, like the other residents of CHCC, was dependent upon CHCC to care for his needs.

22.     Defendants SavaSeniorCare owed to Daryl Farrington a non-delegable duty to provide reasonable and appropriate nursing and nursing home care.

23.     During Daryl Farrington's residency at CHCC, defendants SSC Cheyenne Operating Company, LLC, d/b/a Cheyenne Healthcare Center; SavaSeniorCare Administrative Services,; SavaSeniorCare Consulting LLC, And SavaSeniorCare, LLC, John Doe Corporation, and each of them, had a duty, under applicable federal and state laws (which were designed for the protection and benefit of residents such as Daryl Farrington) to provide for, and to protect, Daryl Farrington's health and welfare.  Defendants, and each of them, also had a common law duty to provide for the health and welfare of Daryl Farrington.  Defendants had, among other duties, the duty with respect to Daryl Farrington's health and welfare to, *inter alia*:

   a.   Protect Daryl Farrington from sustaining injuries to his person;

   b.   Perform adequate assessments of Daryl Farrington;

   c.   Properly document nursing notes;

   d.   Monitor and accurately assess and record Daryl Farrington's condition, and notify the attending physician and family members of any meaningful change in his condition in a timely manner;

   e.   Establish and implement a patient care plan for Daryl Farrington based upon, and including, an ongoing process of identifying his health care needs and making sure that such needs were timely met;

   f.   Accurately monitor and provide for Daryl Farrington's health, comfort, and safety;

   g.   Maintain accurate records of Daryl Farrington's health, comfort and safety;

   h.   Provide Daryl Farrington with appropriate medical and nursing care;

    i.   Maintain trained, qualified, and licensed nursing and other staffing at levels adequate to meet Daryl Farrington's needs; and

    j.   Provide sufficient supervision to Daryl Farrington, a vulnerable resident, to ensure his safety.

24.    Daryl Farrington's injuries were proximately caused by the negligence and other misconduct of the Defendants SavaSeniorCare, in the following particulars:

    a.   Failure to provide adequate numbers of trained and qualified staff and personnel to attend to the reasonable needs of the residents of its nursing home operated under the business style of "Cheyenne HeathCare Center, LLC;"

    b.   Failure to provide proper and appropriate training for personnel to attend to the reasonable needs of the residents of its nursing home operated under the business style of "Cheyenne HealthCare Center, LLC;"

    c.   Failure to provide proper and appropriate supervision and monitoring of personnel who attend to the reasonable needs of the residents of its nursing home operated under the business style of "Cheyenne HeathCare Center, LLC;"

    d.   Failure to maintain and protect the physical safety of its residents, including Daryl Farrington;

    e.   Failure to develop and implement a comprehensive care plan to meet Mr. Farrington's needs;

    f.   Failure to protect frail, vulnerable persons;

    g.   Failure to perform adequate and timely nursing assessments;

    h.   Failure to keep residents safe and free from avoidable accidents;

    i.   Failure to properly and appropriately manage monies;

j.  Failure to supervise its management, including but not limited to, the Administrator and Director of Nursing;

k.  Failure to develop a comprehensive care plan to include measureable objectives and outcomes to meet Mr. Farrington's needs based on a comprehensive assessment;

l.  Failure to give Mr. Farrington care that met the nursing professional standards of quality to prevent him from having negative healthcare consequences;

m.  Failure to take all preventive measures known for fall risk;

n.  Failure to notify family of changes;

o.  Failure to consistently assess and document the condition of Mr. Farrington's skin;

p.  Failure to provide adequate supervision and assistance to prevent accidents;

q.  Failure to follow policies and procedures;

r.  Failure to meet the physical and psychosocial needs of residents;

s.  Failure to maintain complete, accurate and legible medical records; and

t.  Failure to provide quality of care.

25.  As a result of said defendants' conduct, as alleged above, Daryl Farrington suffered the following damages for which plaintiff is seeking compensation:

a.  Personal injuries, including, but not limited to over-sedation, skin breakdown, various bruises and other injuries, all to his damage in a sum that will be proven at trial;

b.  Medical expenses, according to proof at trial, and

c.  General and special damages in an amount that will be proven at trial.

## STATEMENT OF FACTS

26.     Plaintiff incorporates paragraphs 1 – 25 and makes the same a part hereof as if fully set forth herein.

27.     On April 9, 2015, Daryl Farrington became a resident of Defendants' Cheyenne HealthCare Center (CHCC) nursing home. He was transferred from Cheyenne Regional Medical Center for rehabilitation for generalized weakness. He was also diagnosed with multiple mental and physical problems, including but not limited to post-traumatic stress disorder (PTSD), obsessive compulsive disorder (OCD), hypertension, ADHD, sleep apnea, and gastroesophageal reflux disease.

28.     Mr. Farrington was on medications for mental disorders and various physical disorders.

29.     On April 11, 2015, Mr. Farrington was found lying on his left side on the floor next to the bed. The plan of care included adding an alarm if Mr. Farrington attempted to get up without assistance.

30.     On April 29, 2015, the nurse noted Mr. Farrington had moments of lethargy from 6:00 AM to 9:00 AM. He had a flat affect with a stuporous look. He would not verbally respond to the nurse, but did follow commands. CHCC staff did not notify Mr. Farrington's physician.

31.     On May 9, 2015, Mr. Farrington had an unwitnessed fall with no injury. According to the documentation, his family was not notified. There was no mention of an alarm that was to be an update to the plan of care after the previous fall.

32.     On May 10, 2015, it was noted Mr. Farrington had a rash to his groin.

33.     On May 13, 2015, Mr. Farrington had another fall. There is no indication of the presence of an alarm.

34.     CHCC staff had Mr. Farrington sign his own psychiatric medication consent by signing with an "X". Mr. Farrington had a durable power of attorney and was not competent to sign such documents.

35.     From May 26, 2015 through May 31, 2015, Mr. Farrington was noted to have a flat affect. He had a sudden decline and was having difficulty bearing his weight. His blood pressure dropped to 77/44. A stat Comprehensive Metabolic Panel was ordered but the results are not included in the record. Mr. Farrington was to be fed by staff for all meals.

36.     On May 31, 2015, Mr. Farrington fell out of his wheelchair. A new intervention was added to offer a reacher.

37.     According to the medical records, a nurse was concerned about Mr. Farrington's very sudden decline. Mr. Farrington was becoming catatonic, had a decline in ADL's and lack of participation in activities, including an inability to have meaningful conversations with people.

38.     According to the medical records, there were multiple physician's orders for medications for Mr. Farrington that were not administered.

39.     On June 10, 2015, it was noted on Mr. Farrington's head to toe assessment that he had a rash on his groin/scrotum, and his skin was intact.

40.     On June 11, 2015, a change of condition report was completed for pain and redness to Mr. Farrington's left great toe. He had a one-centimeter in circumference area near the top of his toenail that was black and red in color. His family was not notified.

41.     On June 15, 2015, an order was noted for Cogentin to be administered as needed. According to the medical records, it was given as much as twice per day. Drowsiness can be a side effect of Cogentin.

42.     On June 17, 2015, at approximately 7:30 PM, a nurse noted new orders to discontinue current Seroquel 50 mg orders due to increased sluggishness and lethargy. At approximately 8:00 PM a nurse noted not being able to awaken Mr. Farrington and held his medications.

43.     On June 17, 2015, Mr. Farrington's skin was noted to be intact and no rashes.

44.     On June 20, 2015, Mr. Farrington's sister arrived from Michigan and was taking him to Michigan with her. It was noted on the discharge MDS that Mr. Farrington had no behaviors and was not rejecting care. There was no mention regarding Mr. Farrington's skin integrity on his discharge form.

45.     In the evening of June 20, 2015, enroute from Wyoming to Michigan, Mr. Farrington's sister took him to the Emergency Room at the hospital in Lexington, Nebraska due to concerns that he had no urine after eight hours, and was having abdominal and bilateral leg pain.

46.     Upon examination at the hospital in Lexington on June 20, 2015, Mr. Farrington was found to be weak and confused, with bilateral lower leg redness and two plus edema which was painful to touch. He complained of bilateral foot pain and he had a pressure sore on his left great toe, and scrotal redness and pain.

47.     The next day, on June 21, 2015, Mr. Farrington was seen in the emergency room at McLaren Hospital in Lansing, Michigan. Mr. Farrington had severe groin pain and was admitted for a urinary tract infection. The nurse noted a necrotic pressure sore to Mr. Farrington's left toe and a rash on his groin.

48.     On June 22, 2015, Mr. Farrington was placed in contact isolation at McLaren Hospital for a Clostridium difficile infection. His wounds were treated.

49.     On June 23, 2015, at the McLaren Hospital, a rapid response team was notified due to Mr. Farrington having hypotension.  The hospital medical team was concerned Mr. Farrington was overmedicated and a psychology consult was ordered.

50.      It was noted in the psychiatric consultation that Mr. Farrington lacked capacity to make medical decisions and needed his Durable Power of Attorney sister to assist.   Mr. Farrington's medications and amounts were changed and as a result, Mr. Farrington became more alert and awake in two to three days.

51.     During hospitalization, intravenous vancomycin was started for scrotal cellulitis. Cultures showed MRSA and Enterococcus Faecalis bacteria.  Bilateral venous Doppler showed right popliteal vein chronic deep vein thrombosis.

52.     At all relevant times, Defendants SavaSeniorCare held a fiduciary position of trust toward Daryl Farrington, and toward his family, and owed to him the highest duties of good care, adequate staffing, proper physical protection, candor and truthfulness.

53.     At the time of his admission to CHCC and subsequently thereafter, Daryl Farrington was completely dependent on CHCC for 24-hour nursing care, including, but not limited to, fall prevention.

54.     At the time of admission to CHCC and subsequently thereafter, Daryl Farrington was a vulnerable adult who relied on the staff employed by Defendants for assistance with basic activities of daily living.

55.     Defendants SavaSeniorCare breached and violated its duties toward Daryl Farrington, and did so with knowledge and forethought and purpose, for the sake of enhancing its corporate profits and pecuniary gain.

56.     The negligence, inattention, and misconduct of Defendants SavaSeniorCare were committed as part of a pattern of wrongdoing on the part of the corporate Defendant.

57.     Daryl Farrington was injured and damaged as a result of the misconduct of Defendants SavaSeniorCare.

58.     At all relevant times, Defendant SavaSeniorCare Administrative Services, LLC had a duty to properly manage the facility of CHCC in all manners as it relates to the care treatment of the frail, vulnerable population of residents assigned to their care.

59.     Defendant SavaSeniorCare breached and violated its duties toward Daryl Farrington and toward his family, and did so with knowledge and forethought and purpose.

60.     The negligence, inattention, and misconduct of Defendant SavaSeniorCare Administrative Services, LLC were committed as part of a pattern of wrongdoing on the part of the management company.

61.     Daryl Farrington was injured and damaged as a result of the negligence, misconduct, and fraud of Defendants SavaSeniorCare.

### FIRST CAUSE OF ACTION
### (Negligence of All Defendants)

62.     Plaintiff incorporates all preceding paragraphs in their entirety and makes the same a part hereof as if fully set forth herein.

63.     Daryl Farrington brings this negligence action against Defendants.

64.     Defendant CHCC, at all times pertinent hereto, was a nursing home licensed in the State of Wyoming.

65.     Defendants SavaSeniorCare, all times pertinent hereto, were the owners and/or operators of SSC Cheyenne Operating Company, LLC and CHCC.

66.     Defendants SavaSeniorCare, at all times pertinent hereto, may have had responsibilities for the management and operation of CHCC.

67.     Defendants held themselves out to be specialists in the field of nursing home care with the expertise to maintain the health and safety of persons unable to care for themselves, such as Daryl Farrington.

68.     Daryl Farrington was a paying resident of CHCC. Defendant SSC Cheyenne Operating Company, LLC, d/b/a CHCC, Defendant SavaSeniorCare Administrative Services, LLC, Defendant SavaSeniorCare Consulting LLC, and SavaSenorCare LLC, by and through their employees, had contractual and other duties to provide competent nursing and other care to Daryl Farrington as required by law and consistent with community standards.

69.     Notwithstanding said duties, Daryl Farrington suffered multiple falls, skin breakdown, and over-sedation.

70.     Defendants were negligent and substandard in at least, but not limited to, the following particulars:

    a.  Defendants failed to take all preventive measures known for high fall risk, including employing the necessary and proper safety equipment and restraints, pursuant to 42 C.F.R. §483.25(h);

    b.  Defendants failed to develop and implement a comprehensive care plan to include measureable objectives and outcomes to meet Mr. Farrington's needs based on a comprehensive assessment. 42 C.F.R. §483.20(k);

    c.  Defendants failed to perform accurate nursing assessments, pursuant to 42 C.F.R. §483.20(g);

   d.  Defendants failed to give Mr. Farrington care that met professional standards of quality to prevent him from having negative healthcare consequences. 42 C.F.R. §483.25(h)(2), §483.20(k)(3)(i);

   e.  Defendants failed to provide adequate supervision and assistance to prevent accidents, pursuant to 42 C.F.R. §483.25(h)(2);

   f.  Defendants failed to maintain complete, accurate and legible medical records for Mr. Farrington, pursuant to 42 C.F.R. §483.75(l)(1);

   g.  Defendants failed to hire adequate numbers of appropriately trained and qualified staff, pursuant to 42 C.F.R. §483.30;

   h.  Defendants failed to adequately train and supervise the staff. 42 C.F.R. §483.20 and §483.30;

   i.  Defendants failed to follow policies and procedures;

   j.  Defendants failed to provide proper supervision and monitoring of staff, 42 C.F.R. §483.75;

   k.  Defendants failed to provide quality of care, pursuant to 42 CFR § 483.25;

   l.  In failing to protect frail, vulnerable persons, pursuant to 42 C.F.R. §483.25(h);

   m.  Defendants failed to supervise its management, including but not limited to, the Administrator and Director of Nursing;

   n.  Defendants failed to meet the physical and psychosocial needs of its residents;

   o.  Defendants failed to notify physician and family of changes of condition. 42 C.F.R. §483.10(b)(11);

   p.  Defendants failed to consistently and accurately assess and document the condition of Mr. Farrington's skin. 42 C.F.R. §483.20(b)(1) and §483.20(g);

q.  Defendants failed to provide quality of care. 42 C.F.R. §483.25; and

r.  Defendants failed to properly manage monies.

71.    As a direct and proximate result of Defendants' breach of their duties, Daryl Farrington suffered injuries, including but not limited to, multiple falls, skin breakdown, infections, and over-sedation.

72.    At all times pertinent hereto, Daryl Farrington was unable to care for himself and was under the exclusive control and care of Defendants.

73.    Defendants SavaSeniorCare, and CHCC breached and violated its duties toward Daryl Farrington and toward his family, and did so with knowledge and forethought and purpose, for the sake of enhancing its corporate profits and pecuniary gain.

74.    The direct actions and omissions of the Defendants and their agents and employees acting within the scope of their agency and employment, as set forth above, also constituted a negligent breach of their duties of due care owed to Mr. Farrington to provide reasonably appropriate and high quality nursing, attendant, and other care, as well as the appropriate supervision and services necessary to meet his needs and assure his known safety needs for close supervision, monitoring, physical safety and protection are met.

75.    As a direct and proximate result of the above-mentioned conduct, all of which was negligent and substandard, Plaintiff was damaged as previously described in this Complaint, and is entitled to damages as allowed under applicable Wyoming law.

76.    Plaintiff seeks recovery for damages caused by the direct negligence of Defendants, as well as the negligence of their agents, servants and employees, including but not limited to emotional and physical pain and suffering of Daryl Farrington, physical impairment, increased risk of harm, and such other damages as are compensable under Wyoming law.

**WHEREFORE,** Plaintiff\ requests that judgment be entered in his favor and against Defendant SavaSeniorCare LLC, Defendant SavaSeniorCare Consulting LLC, Defendant SavaSeniorCare Administrative Services, LLC, Defendant SSC Cheyenne Operating Company, LLC d/b/a Cheyenne HealthCare Center, and John Doe Corporation for damages in such amount as the trier of fact determines to be just and proper, for Defendants' said misconduct and to dissuade them and others similarly situated from engaging in similar misconduct in the future; for costs of this action; and for pre-judgment and post-judgment interest, costs, attorney fees, expert witness fees and such other and further relief as this Court deems just and proper in these circumstances.

## JURY DEMAND

**Plaintiff hereby requests a jury of six (6) for the trial of the matter.**

DATED this 5th day of February, 2018.

DARYL FARRINGTON,

Diana Rhodes, Esq.  #5-2734
Rhodes Law Firm, LLC
2015 Warren Ave.
Cheyenne, WY  82001
(307) 634-4444
diana@drhodeslaw.com

**BEFORE THE MEDICAL REVIEW PANEL
OF THE STATE OF WYOMING**

| | | |
|---|---|---|
| IN THE MATTER OF THE CLAIM OF | ) | |
| DARYL FARRINGTON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| vs. | ) | **DOCKET NO. MRP -___** |
| | ) | |
| SSC CHEYENNE  OPERATING COMPANY, | ) | |
| LLC, a Foreign Limited Liability Company, | ) | |
| d/b/a CHEYENNE HEALTHCARE CENTER; | ) | |
| SAVASENIORCARE ADMINISTRATIVE | ) | |
| SERVICES, a Foreign Limited Liability | ) | |
| Company; SAVASENIORCARE CONSULTING | ) | |
| LLC, a Foreign Limited Liability Company; | ) | |
| SAVA SENIOR CARE, LLC, a Foreign Limited | ) | |
| Liability Company, | ) | |
| | ) | |
| **Defendants.** | ) | |

**CLAIM PRESENTATION TO THE
WYOMING MEDICAL CLAIM REVIEW PANEL**

To:   Medical Review Panel
      c/o Eric Easton
      Attorney General Office
      800 Werner Court, Suite 190
      PO Box 1507
      Casper, WY  82602
      U.S. Mail, postage prepaid, and Email


From:  Diana Rhodes
       Rhodes Law Firm, LLC
       2015 Warren Ave.
       Cheyenne, Wyoming  82001
       (307) 634-4444
       diana@drhodeslaw.com
       Facsimile:  (307) 222-0280


REPRESENTING:   Daryl Farrington

---

**EXHIBIT**

tabbies

*1*

**This claim, alleging at a minimum, negligence, carelessness, and breach of contract, is submitted pursuant to the Wyoming Medical Review Panel Act of 2005 (Wyo. Stat. § 9-2-1513, et seq.).**

A. The Claimant is Daryl Farrington, who resides at 1000 Oak St., Apt. 114 Flint MI 48503.

   The Claimant is a resident of Laramie County, and is represented by his attorney who is a resident of Laramie County, Wyoming.

        Diana Rhodes, Esq.
        Traci Rivinus, Esq.
        Rhodes Law Firm, LLC
        2015 Warren Ave.,
        Cheyenne, WY  82001
        307-634-4444
        Fax:  307-222-0280
        diana@drhodeslaw.com

        Jerome Reinan, #22301
        The Law Offices of J.M. Reinan, P.C.
        1437 High St., Ste 500
        Denver CO 80218
        (303) 894-0383
        jreinan@reinanlaw.com

B. The health care providers against whom this claim is presented are:

        Sava Senior Care, LLC
        SavaSeniorCare Administrative Services LLC
        SavaSeniorCare Consulting LLC
        One Ravinia Drive
        Atlanta, GA  20346-2115
        (770) 829-5100

        SSC Cheyenne Operating Company, LLC
        d/b/a Cheyenne Health Care Center
        2700 E 12th St
        Cheyenne, WY 82001
        (307) 634-7986

No other supplementary information is readily available to the claimant.

C. Daryl Farrington's injuries include but are not limited to:

    Over-sedation- chemical restraint
    Significant skin breakdown – scrotal cellulitis
    Various bruises and other injuries from falls

D.     The incidents in question occurred during Daryl Farrington's residency at Cheyenne Healthcare Center (CHCC) which began on April 9, 2015 until he was discharged on June 20, 2015.

The following conduct of CHCC is believed to constitute a malpractice (nursing home negligence) claim. Upon Daryl Farrington's admission on April 9, 2015, he was a paying resident at CHCC pursuant to a contract between himself and CHCC. CHCC was legally and contractually obligated to hire, supervise, and train competent and qualified nursing staff to provide him with competent care and reasonable living assistance in line with industry and community standards. Such obligation included, but was not limited to, CHCC's duty to provide Mr. Farrington with a safe environment, to ensure proper health care, nutrition, and protection from injury.

CHCC failed to meet its legal and contractual obligations to Daryl Farrington. Mr. Farrington was admitted to CHCC for generalized weakness. He was also diagnosed with multiple mental and physical problems. While a resident at CHCC, Mr. Farrington received sub-standard nursing care and developed skin breakdown. He was also over-medicated.

The negligent conduct of CHCC includes but is not limited to, failure to notify family of changes, failure to consistently assess and document the condition of Mr. Farrington's skin, failure to develop a comprehensive care plan to include measureable objectives and outcomes to meet Mr. Farrington's needs based on a comprehensive assessment, failure to give Mr. Farrington care that met the nursing professional standards of quality to prevent him from having negative healthcare consequences, failure to provide adequate supervision and assistance to prevent accidents, failure to hire adequate numbers of appropriately trained and qualified staff, failure to adequately train and supervise the staff, failure to follow policies and procedures, all of which were required to ensure Daryl Farrington's physical and mental health needs were being met. These failures, whether by negligence, carelessness, or otherwise, directly and proximately resulted in harm to Daryl Farrington.

E. A list of all health care providers having contact with the claimant relevant to this claim is attached as **Attachment A.** As to the negligence of the Respondent, Claimant believes the only witnesses to his injuries are the healthcare personnel caring for Daryl Farrington at CHCC, and at Cheyenne Regional Medical Center.

F. A valid medical release form is attached as **Attachment B.**

G. The proper venue for the hearing in this matter is in Laramie County, Cheyenne, Wyoming.

Consistent with the provisions of Chapter 2, Section 3 ("Amended Answer") of the Rules of the Medical Screening Panel, Claimant expressly reserves the right to amend this claim once as of right.

DATED: June 16th, 2017.

Diana Rhodes, Esq., Attorney for Claimant

<u>Attachment A</u>: List of Health Care Providers

The healthcare providers who have had contact with Claimant relevant to this claim are:

1.      SSC Cheyenne Operating Company, LLC
        d/b/a Cheyenne Health Care Center
        2700 E 12th St
        Cheyenne, WY 82001
        (307) 634-7986

        Possible witnesses: various nursing, CNA, pharmacy, physical therapy and other associated administrative and support personnel, whose identities are not presently available.

2.      Lexington Regional Health Center
        PO Box 980
        Lexington, NE  68850
        (Emergency Room, date of service:  6/20/15)

3.      McLaren Flint Hospital
        401 S. Ballenger Hwy
        Flint, MI  48532
        (Dates of service:  6/22/15 - inpatient; 8/13/15- outpatient; 9/4/15 outpatient)

## BEFORE THE MEDICAL REVIEW PANEL
## OF THE STATE OF WYOMING

| | | |
|---|---|---|
| IN THE MATTER OF THE CLAIM OF | ) | |
| DARYL FARRINGTON, | ) | |
| | ) | Jan. 11, 2018 |
| Claimant, | ) | |
| | ) | |
| v. | ) | MRP 17-15 |
| | ) | |
| SAVA SENIOR CARE, LLC; | ) | |
| SSC CHEYENNE OPERATING | ) | |
| COMPANY, LLC; d/b/a | ) | |
| CHEYENNE HEALTH CARE CENTER | ) | |
| | ) | |
| Respondent. | ) | |

### ORDER OF DISMISSAL

THIS MATTER comes before the Director of the Medical Review Panel pursuant to W.S. § 9-2-1519(e) and the Medical Review Panel Rules, adopted November 21, 2005.

On January 5, 2018, the parties notified the Director of the Medical Review Panel via email that the parties had agreed to waive further Medical Review Panel proceedings.

The Director finds that he should issue an order authorizing the claimant to immediately pursue the claim in a court of competent jurisdiction, pursuant to W.S. § 9-2-1519(a).

NOW, THEREFORE, IT IS ORDERED, that the Claimant has complied with the requirements of the Wyoming Medical Review Panel Act, W.S. § 9-2- 1513 et. seq.; that no further action or proceeding shall take place with this claim, and that the Claimant is authorized to immediately pursue the claim in a court of competent jurisdiction against the Health Care Providers --- Pursuant to W.S. § 9-2-1518(a), this dismissal constitutes the final decision of the Medical Review Panel, and the tolling of the applicable limitation period shall begin to run again thirty (30) days after the filing of this decision.

DONE this 11th day of January, 2018.

Eric A. Easton, Director
Medical Review Panel

EXHIBIT

2

## CERTIFICATE OF SERVICE

I, Eric A. Easton, do hereby certify that a true and correct copy of the foregoing ORDER OF DISMISSAL was served upon the parties by depositing a true and correct copy in the U.S. mail, postage prepaid this 11th day of January, 2018, to the following:

Diana Rhodes
Rhodes Law Firm
2015 Warren Avenue
Cheyenne, WY 82001

Jerome Reinan
Law Offices of Jerome Reinan
1437 High Street, Suite 500
Denver, CO 80218

Christopher R. Jones
Gordon & Rees, LLP
555 Seventeenth Street, Suite 3400
Denver, CO 80202

Office of Administrative Hearings
2020 Carey Avenue, Fifth Floor
Cheyenne, WY 82002

Eric A. Easton, Director #5-2176
Medical Review Panel